UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BETHANY TAYLOR, BRENDA McGOVERN, CHRISTINA NADEAU, CHRISTINE McWILLIAMS and MICHELLE LAWRENCE, <br><br> v. <br><br> MILFORD REGIONAL MEDICAL CENTER, INC., **Defendant** | Civil No: 4:23-cv-40009-MRG |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

I. INTRODUCTION

The Defendant was faced with two groups of individuals who could not receive the COVID-19 vaccines: those whose religious beliefs prevented them from being vaccinated and those who were medically unable. Both were (and are still, despite some of the assertions coming from the Defendant's Memorandum) protected under federal law and must be accommodated unless such an accommodation would pose an undue hardship. Defendant's argument, which it claims is supported solely from the pleadings, is that somehow the effects of the COVID-19 virus on and from an unvaccinated person are somehow worse if the reason that person is unvaccinated is due to their religious beliefs, rather a medical condition.

Defendant claims that its allowing one group of unvaccinated individuals to work while firing another group of unvaccinated individuals solely because the

1

latter is precluded for religious reasons is "irrelevant" to the factual record necessary for an employer to meet its burden of proving undue hardship, and its position that it could not do exactly what it did (accommodate unvaccinated employees) entitles it to judgment on the pleadings alone. Milford Regional can spend its money however it pleases, including for Motions such as this, getting their money's worth by taking shots at Plaintiff's counsel, stating that he pleaded "widely debunked talking points of COVID conspiracy theorists[1]." (Defs. Mem. p. 15).

Defendant also claims that accommodating religious beliefs risks "significant harm to patients, visitors, staff, and those who need medical care but are too afraid to come to the hospital because of the risk of infection." (Defs. Mem. p. 3). Defendant then bases the reasoning of its argument on *Adams,* yet admits that Mass General accommodated both medical conditions and religious beliefs for unvaccinated employees, the very thing it claims hospitals cannot do without facing hardship, and was denied summary judgment on the issue of undue hardship.

Thus, Defendant's arguments can be summarized as follows:

1. It is only an undue hardship to accommodate unvaccinated employees who cannot get vaccinated for religious reasons, but

---

[1] This is also a bizarre assertion, as two of the articles cited in the paragraphs referenced by Defendant were authored by Dr. Michael Klompas, a world-renowned Epidemiologist and Infectious Disease Physician at Mass General Brigham. Dr. Klompas's testimony, both via declaration and deposition, was a significant factor in MGB's undue hardship argument, both in the preliminary injunction and summary judgment stages in *Adams v. Mass Gen. Brigham, Inc.,* 2023 WL 6318821 (D. Mass. Sept. 28, 2023), upon which Defendant relies so heavily in its Memorandum.

not an undue hardship to accommodate unvaccinated employees who cannot get vaccinated for medical reasons;

2. Milford Regional is entitled to judgment on the pleadings because as a general rule it is a hardship as a matter of law to do exactly what it has been doing (accommodating unvaccinated employees);

3. Hospitals cannot accommodate unvaccinated (religious) employees because it is an undue hardship as a matter of law, and in support of this assertion, relies on *Adams*, in which the largest hospital in the Commonwealth *did* offer accommodation for religious beliefs and was denied summary judgment on the issue of undue hardship as a matter of law; and

4. That no record needs to be developed on the factual issue of whether accommodation would pose an undue hardship. The basis? Because Defendant says so.

Not only does Defendant contradict itself on every argument and position it takes throughout its Memorandum, but it also misrepresents, and cherry picks the *Adams* record and supports its arguments with facts that are not contained in, nor can be inferred from, the pleadings. Defendant's motion should be denied, and the parties should be able to conduct discovery and develop a record on the issue.

## II.   LEGAL STANDARD

The legal standard for evaluating a motion for judgment on the pleadings is essentially the same as the standard for evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), except that "[a] Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole." *Kimmel & Silverman, P.C. v. Porro,* 969 F. Supp. 2d, 46, 49 (D. Mass. 2013), quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006); *see also R.G. Fin. Corp. v. Vergara-Nuhez*, 446 F.3d 178, 182 (1st Cir. 2006) ("The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice.").

A party may move for judgment on the pleadings "[after the pleadings are closed but within such time as not to delay the trial.]" *Tavares de Almeida v. Children's Museum*, 28 F.Supp.2d 682, 685 (D. Mass. 1998); Fed. R. Civ. P. 12(c). All inferences should be drawn in favor of the nonmoving party. The Court must "view the facts contained in the pleadings in the light most favorable to the party opposing the motion… and draw all reasonable inferences in [that party's] favor." *Curran v. Cousins*, 509 F.3d 36, 43 (1st Cir. 2007). A defendant's motion for judgment on the pleadings may not be granted by a court "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st. Cir. 1988) quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic

4

stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom." *Ross v. Jackson Nat'l Life Ins. Co.*, No. CV 19-12364-LTS, 2020 WL 2850290, at *7 (D. Mass. June 2, 2020) (Sorokin, L) quoting *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006). The standard associated with Fed. R. Civ. P. 12(c) relief is clear; the court may grant judgment on the pleadings when the nonmovant can prove no set of facts in support of a claim that would entitle it to relief. *Pittner v. Castle Peak 2012-1 Loan Tr.*, 436 F. Supp. 3d 438, 440–41 (D. Mass. 2020) citing *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988). For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989)(citation omitted).

### III. ARGUMENT

#### A. Undue Hardship is a Question of Fact Which Should Not be Determined on the Pleadings.

Courts "apply a two-part framework in analyzing religious discrimination claims under Title VII." *Sánchez-Rodríguez v. AT & T Mobility P.R., Inc.*, 673 F.3d 1, 12 (1st Cir. 2012). "First, [a] plaintiff must make [her] prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." *Id*. (quoting *Cloutier v. Costco Wholesale Corp.,* 390 F.3d 126, 133 (1st Cir. 2004)). "[T]he burden then shifts to the employer

5

to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." *Lowe v. Mills*, 68 F.4th 706, 719 (1st Cir. 2023), cert. denied, U.S., No. 23-152 (Oct. 30, 2023).

Whether Defendant would have faced an undue hardship in accommodating the Plaintiffs is a question of fact, wherein the Defendant employer bears the burden. This requires establishing a record. It is therefore premature to resolve the issue on Defendant's 12(c) motion. "Whether an accommodation is reasonable is a question of fact." *Antione v. First Student, Inc.,* 713 F.3d 824, 831 (5th Cir. 2013). *See also McWright v. Alexander,* 982 F.2d 222, 227 (7th Cir. 1992) ("As for the balance between reasonable accommodation and undue hardship, **these matters are questions of fact and thus generally inappropriate for resolution on the pleadings"** (emphasis added)); *Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 877 (9th Cir. 1989) ("whether a particular accommodation would have imposed an undue hardship on the employer is a question of fact"); *Walsh v. Coleman,* No. 3:19-cv-980 (JAM), 2020 WL 7024927, *6 (D. Conn. Nov. 30, 2020) ("Undue hardship is a question of fact" **inappropriate for determination at the motion to dismiss stage**) (emphasis added); *Menuel v. Hertz Corp.,* No. 1:07-CV-3031-JTC-RGV, 2008 WL 11322934, *4 (M.D. Ga. Nov. 10, 2008) (noting that the questions surrounding an undue burden "is a question of fact that will depend on a variety of factors ... thus precluding dismissal of the Title VII claim."); *Doe 1 v. NorthSHore Univ. Healthsystem,* No. 21-cv-05683, 2021 WL 5578790, (N.D. Ill. Nov. 30, 2021)

6

("whether an employer can 'reasonably accommodate a person's religious beliefs without undue hardship is basically a question of fact.'") (quoting *Minkus v. Metro. Sanitary Dist. Of Greater Chicago,* 600 F.2d 80, 81 (7th Cir. 1979)); *E.E.O.C. v. Universal Mfg.*, 914 F.2d 71, 74 (5th Cir. 1990) ("In a typical case, the question of what constitutes undue hardship will usually be left to the finder of fact."); *Garcia-Ayala* v. *Lederle Parenterals, Inc.,* 212 F.3d 638, 650 (1st Cir. 2000) ("These are difficult, fact intensive, case-by-case analyses, ill-served by per se rules or stereotypes.").

Given the fact-intensive nature of the issue of undue hardship, and the Defendant's burden to show that accommodation would have been an undue hardship, the pleadings are insufficient to establish the specific hardships that Defendant would have faced in accommodating the Plaintiffs' particular requests. Defendant would need to show how accommodating these five individuals would pose an undue hardship. "It can do so by 'examining the specific hardships imposed by specific accommodation proposals.'" *Cloutier,* at 135 (1st Cir. 2004), quoting *Toledo* v. *Nobel-Sysco, Inc.,* 892 F.2d 1490 (10th Cir. 1989). This examination was not, nor could it practically be, conducted based on the pleadings alone.

This is also why each of Defendant's arguments, such as what are and are not conspiracy theories, the divisiveness of the vaccine issue, and even the efficacy of the vaccines and the specific hardship that Defendant claims Plaintiffs posed, requires a developed record. For instance, in Defendant's Memorandum, it refers to Plaintiff's Complaint, ¶11 which states:

7

11. Defendant's President and CEO notified all of its employees that it would be requiring all employees to be vaccinated against COVID-19 via email on August 5, 2021.

Defendant then offers the email as an Exhibit for the purposes of proving, at the pleading stage, that "Milford Regional made an informed judgment, based on the input and recommendations of medical experts, that imposing a vaccine requirement was necessary to protect the health and safety of its patients, visitors, and staff." (Defs. Mem. p. 15). This is premature. The inference that Milford is asking the Court to make, in favor of the Defendant rather than Plaintiff, is that it did in fact base its decision on input from medical experts simply because it says it did. This approach would be great for judicial efficiency. Courts could simply inquire as to every employer being sued under Title VII whether their hardship defense was "informed," and if the answer is yes, case dismissed! However, this honor-system approach has no basis in law. Discovery on the issue of how, exactly, Defendant came to its "informed judgement" is necessary to establish the claims and defenses in the matter. Taking a Defendant at its word at the pleading stage is not enough to grant judgment on the issue of undue hardship.

Further, any studies, expert opinions, opinions on the medical risks posed by unvaccinated employees and the efficacy of the available COVID-19 vaccines are necessarily questions of fact for a jury. See Fed. R. Evid. 702; *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998), citing *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), (expert testimony assists the trier of fact in understanding a fact issue).

8

**B. *Adams* Does Not Support Defendant's Position.**

Defendant's reliance on *Adams* bounces back and forth from Judge Saylor's Memorandum denying the plaintiffs' preliminary injunction (*Together Employees v. Mass Gen. Brigham Inc.,* 573 F. Supp. 3d 412 (D. Mass. 2021), and the more recent Memorandum in *Adams*[2] denying the *Defendant* summary judgment on the very issue at hand: undue hardship as a matter of law as it pertains to religious accommodation to the COVID-19 vaccine[3].

First, Defendant's assertion that MGB "allowed exemptions on a case-by-case basis for some period of time then stopped allowing them" is not correct, nor is it *anywhere* in the *Adams* record[4]. (Defs. Mem. p. 11). In fact, MGB never stopped accommodating unvaccinated employees. Defendant knows this but knows also that this fact destroys its argument that no record need be established because no hospital can accommodate unvaccinated employees (at least the religious ones, anyway) without facing undue hardship. The largest hospital in the Commonwealth did and does make accommodation for both religious and medical reasons. It should therefore be noted that nowhere in the *Adams* record can the Defendant find

---

[2] The case was originally filed under Fed. R. Civ. P. 23.2, with the unincorporated association being named "Together Employees." After the denial of the preliminary injunction, the Complaint was amended to include each plaintiff named individually.
[3] *Adams* involved ADA claims in addition to Title VII.
[4] It's right there in *Adams:* "From November 1, 2021, to July 12, 2022, MGB hired 14,000 new employees, of whom 40 were granted religious, medical or temporary exemptions. (Sheehan Dep. at 35, Def.'s App'x, Vol. II at 262). According to MGB, the added risk was acceptable because "these people had legitimate exceptions." (Walls Dep. at 87-88, Def.'s App'x, Vol. II at 313).

evidence of the catastrophic consequences it claims would result from accommodating its employees' religious beliefs.

The truth is that Defendant's position has nothing to do with the substance of hardship, but that it believes, as a matter of law, that it can use hardship as a shield to deny religious accommodation in the workplace. Further, the reference to Judge Saylor's comments about the reasonableness of MGB's vaccination policy contemplated an actual analysis of what specific hardship the hospital would face. For instance, the Defendant cites *Adams*, at 7, wherein Judge Saylor suggests that categorizing employees, such as patient-facing or non-patient-facing, in accordance with the functions of their job. What Judge Saylor does *not* suggest, anywhere, in any opinion, is that an employer should accommodate only disabilities and not religious beliefs. In fact, Defendant here did exactly what MGB did: provide accommodation to some and not others. The crux of the *Adams* opinion was that because MGB determined that some level of risk was tolerable, it had to prove the hardship of each individual risk:

> "Suppose, for example, that one employee—and only one employee—did, in fact, experience unlawful discrimination on the basis of religion. Had that employee been granted an exemption, the total number of exempt employees would have risen from 234 to 235. Presumably, it would be challenging for MGB to prove that a single marginal case would have materially increased the risk (particularly if the employee in question did not normally have patient-facing responsibilities), and that therefore the burden of making the requested accommodation was undue. It is not possible, on the current record, to evaluate the undue hardship created by any one specific accommodation—even if it is possible to do so on a wholesale basis.

> It is, of course, true that precision in measuring epidemiological risk is not possible, and that therefore it is impossible to state with complete confidence the exact additional risk enhancement posed by each additional exemption granted. And it is surely true that the additional risk posed by granting hundreds, or indeed thousands, of additional exemptions would have been substantial. But based on the record before it, the Court cannot grant summary judgment as to every individual claim on the basis of undue hardship considered as a whole. The fact that the overall decisions made by MGB may have been entirely reasonable does not necessarily mean that reversing a single individual decision would create such a hardship." *Adams*, at 8.

Milford's situation is no different, and on the pleadings, it cannot establish that each named plaintiff would have posed an undue hardship as a matter of law.

### C. Defendant's Argument that Allowing Unvaccinated Employees to Work is Only a Hardship if they are Religious Creates an Additional Question of Fact Upon Which a Record Should be Established.

The question of hardship is, as a general matter, a question of fact not appropriate for resolution at the pleading stage. Further, Defendant created a separate issue, namely that those who are unvaccinated for religious reasons pose more of a hardship than those who are unvaccinated for medical reasons. Defendant states that those with medical conditions precluding them taking the vaccine would face physical harm. (Defs. Mem. p. 13). Thus, toward the end of its Memorandum, Defendant admits that the decision had nothing to do with undue hardship. If unvaccinated employees posed an undue hardship, then even those with medical contraindications could not work at Defendant's hospital (because accommodating them would pose an undue hardship). However, Defendant allowed those individuals to work unvaccinated and now admits that it is only because these employees physically could not take the vaccine. Defendant therefore decided, based

11

on its own criteria, as to which employees legitimately (in its view) could or could not take the vaccine, and exempted them. ***The result is that Defendant determined religious beliefs were not legitimate enough to warrant accommodation***. This approach is backwards from the requirements of Title VII, which first contemplates an attempt at accommodation. Title VII requires an employer to accommodate the religious practice of an employee unless it "demonstrates that [it] is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). *Adams,* supra. The extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 61 (1986).

Here, Milford made a predetermined decision as to hardship and required its employees to demonstrate that they could not physically take the vaccine. Religious beliefs were never taken into account. In *Groff v. DeJoy,* 600 U.S. 447, 468 (2023), The Supreme Court clarified the burden of an employer in showing that a religious accommodation would be an undue hardship: "[w]e think it is enough to say than an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id*, at 18, quoting *Trans World Airlines, Inc., v. Hardison,* 432 U.S. 63 (1977). Further, the Court stated that "[w]hat is most important is that "undue hardship" in Title VII means what it says, and courts should resolve whether a hardship would be

substantial in the context of an employer's business in the commonsense manner that it would use in applying any such test." *Id*, at 19. Calling the de minimis interpretation of *Hardison* "erroneous," the Court went on to say that a potential accommodation would have to be assessed based on its effect on the conduct of the employer's business, and **not on the basis of bias, hostility or animosity toward a particular religion or accommodations in general**. (emphasis added). *Id*, 19-20.

Last, *Lowe* is instructive in this situation, as the First Circuit specifically discussed the issue of medical and religious exemption, stating that, drawing inference in favor of the Plaintiffs, the comparison was not appropriate for a motion to dismiss:

> But, drawing all reasonable inferences in the plaintiffs' favor, it is plausible that a version of the Mandate that did not include a medical exemption could do an even better job of serving the State's asserted public health goals, and that the inclusion of the medical exemption undermines the State's interests in the same way that a religious exemption would by introducing unvaccinated individuals into healthcare facilities.
>
> Of course, it is entirely possible that additional facts might show that the two types of exemption are not comparable. For example (and not by way of limitation), it may be that medical exemptions are likely to be rarer, more time limited, or more geographically diffuse than religious exemptions, such that the two exemptions would not have comparable public health effects. Cf. We the Patriots, 17 F.4th at 286 (discussing evidence suggesting that medical and religious exemptions to a New York vaccine mandate were "not comparable in terms of the 'risk' that they pose[d]" (quoting Tandon, 141 S. Ct. at 1296)). We reject the plaintiffs' apparent view that the only relevant comparison is between the risks posed by any one individual who is unvaccinated for religious reasons and one who is unvaccinated for medical reasons. Instead, we agree with the Second Circuit that Supreme Court precedent "suggests the appropriateness of considering aggregate data

13

about transmission risks." Id. at 287; see id. at 286-87 ("We doubt that, as an epidemiological matter, the number of people seeking exemptions is somehow excluded from the factors that the State must take into account in assessing the relative risks to the health of healthcare workers and the efficacy of its vaccination strategy …."). But, absent factual development, dismissal is unwarranted. *Lowe*, at 715–16.

## IV. CONCLUSION

For the aforementioned reasons, dismissal at this stage is inappropriate, as the pleadings do not show that the Defendant is entitled to judgment as a matter of law on the issue of undue hardship. Plaintiffs request that this Court DENY Defendant's Motion.

Plaintiffs, by their attorney:

_____
Ryan P. McLane, Esq.
BBO #697464
269 South Westfield St.
Feeding Hills, MA  01030
413.789.7771
ryan@mclanelaw.com

## CERTIFICATE OF SERVICE

I certify a true copy of the within document was served upon each other party via ECF on December 15, 2023.

_____
Ryan P. McLane, Esq.