**UNITED STATES DISTRICT COURT**
**DISTICT OF MASSACHUSETTS**

---

| | |
|---|---|
| BETHANY TAYLOR, ) | |
| BRENDA MCGOVERN, ) | |
| CHRISTINA NADEAU, ) | |
| CHRISTINE MCWILLIAMS, and ) | |
| MICHELLE LAWRENCE ) | |
| Plaintiffs, ) | Civil Action No. 4:23-CV-40009-MRG |
| ) | |
| v. ) | |
| ) | |
| MILFORD REGIONAL MEDICAL ) | |
| CENTER, INC. ) | |
| Defendant. ) | |

---

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS**

GUZMAN, J.

Plaintiffs are five former employees of Defendant Milford Regional Medical Center, Inc. ("Milford Regional") who bring claims of religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and Mass. Gen. Laws ch. 151b § 4 (2024) ("c. 151b") stemming from their termination for failure to comply with Milford Regional's COVID-19 vaccination policy despite submitting requests for religious exemptions to receiving the vaccine. [ECF No. 1-1 at 17 & 19].[1] This case was filed in Worcester Superior Court and removed to this Court under 28 U.S.C. §, 1441. [ECF No. 1]. Defendant filed an opposed Motion for Judgment on the Pleadings, [ECF No. 19], which the Court now GRANTS IN PART and DENIES IN PART for the following reasons.

---

[1] Page numbers will refer to the PACER pagination unless otherwise noted.

I.      BACKGROUND[2]

Plaintiffs were employees of Milford Regional prior to their termination. [ECF No. 1-1 at ¶ 7]. Specifically, Taylor was employed continuously since September 2008 as a Computed Tomography Technologist [Id. at ¶ 19]; McGovern was hired in 2011 and was transferred from a Radiology Transporter to Patient Accounts, where her responsibilities included registering patients and filling in for Emergency Room secretaries [Id. at ¶¶ 31-34]; Nadeau had been an Oncology Educator since 2019 [Id. at ¶ 43]; and both McWilliams and Lawrence were Registered Nurses in the Post Anesthesia Care Unit [Id. at ¶¶ 51-52; 60-61]. At least one Plaintiff, Taylor, received favorable performance evaluations [Id. at ¶ 20], and all the Plaintiffs worked a combined 59 years at Milford Regional Medical Center.

In early 2020, a highly contagious novel coronavirus began spreading across the globe which ultimately became known as "COVID-19."[3] By March 2020, the pandemic had effectively shut down the country as the President and Governors of all 50 states declared States of Emergency. See, e.g., Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID–19) Outbreak, 85 Fed. Reg. 15337 (Mar. 18, 2020). One of the primary goals of these actions was to prevent hospitals from being overwhelmed from a potential surge in COVID-19 cases. See Desrosiers v. Governor, 158 N.E.3d 827, 833 (Mass. 2020) (discussing the reasons and purposes of Governor Baker's COVID-19 emergency order). By the end of 2020, 10,000 people in Massachusetts and a million people worldwide were killed by COVID-19. Id. at 837. That number

---

[2] The following facts are taken from the complaint, in the light most favorable to the Plaintiffs as the nonmoving parties. Fountain v. City of Methuen, 630 F. Supp. 3d 298, 305 (D. Mass. 2022) (citing Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)).

[3] The Court takes judicial notice of the following facts, the accuracy of which cannot be reasonably questioned.

has since increased dramatically, as 1,188,278 Americans alone have been killed by COVID-19. (Ctr. For Disease Control and Prevention COVID Data Tracker, https://covid.cdc.gov/covid-data-tracker/#maps_deaths-total (last visited Apr. 15, 2024)).

Nearly as soon as the pandemic started, efforts began to develop a viable vaccination against the novel coronavirus that causes COVID-19 disease. (U.S. Gov't Accountability Off., GAO-21-319, Operation Warp Speed: Accelerated COVID-19 Vaccine Development Status and Efforts to Address Manufacturing Challenges (2021) ("By the end of March 2020, with the initiation of the first clinical trials, the race was on in the United States to develop a vaccine.")). Dubbed "Operation Warp Speed" by the President, this effort to develop viable vaccines for the market culminated with three vaccines, which were granted emergency use authorization by February 27, 2021. (Authorization for Emergency use of Certain Biological Products During the COVID-19 Pandemic; Availability, 86 Fed. Reg. 28608 (effective Feb. 9, 2021) (granting the Johnson and Johnson vaccine emergency use authorization on Feb. 27, 2021, making it the third vaccine after the Moderna and Pfizer-BioNTech vaccinations were granted emergency use authorization in December 2020)). The CDC estimates that about 80% of adults in the United States have received at least one COVID-19 vaccination. (Ctr. For Disease Control and Prevention COVID-19 Vaccination Coverage and Vaccine Confidence Among Adults, https://www.cdc.gov/vaccines/imz-managers/coverage/covidvaxview/interactive/adults.html (last visited Apr. 15, 2024)). "[T]he [COVID-19] vaccines are a safe and effective way to prevent the spread of [the virus]." Mass. Corr. Officers Federated Union v. Baker, 567 F. Supp. 3d 315, 327 (D. Mass 2021).

Defendant Milford Regional announced on August 5, 2021 that all employees would be required to show proof of COVID-19 vaccination to continue their employment. [ECF No. 1-1 at

¶¶ 11, 13; ECF No. 20-1]. Any exemption requests had to be submitted by September 17, 2021, and any employee who had not received an exemption nor provided proof of vaccination was to be placed on unpaid leave until October 15, 2021. [ECF No. 1-1 at ¶ 12-14]. During this leave, an affected employee had a final opportunity to provide proof of vaccine before they would be terminated. [Id. at ¶15]. Each of the Plaintiffs submitted religious exemption requests, which Milford Regional denied on the basis that exempting the Plaintiffs would place an undue hardship on its operations. [Id. at ¶¶ 28, 40, 48, 57, & 68]. The Plaintiffs were subsequently terminated for failing to comply with the vaccine requirement. [Id. at ¶¶ 29, 41, 49, 58, & 61]. It is important to note that while Milford Regional did not grant any religious exemption requests, it did grant several medical exemption requests. [Id. at ¶¶ 17, 18; ECF No. 7 at ¶ 100]

1.  The Plaintiffs' Religious Beliefs

Taylor, Nadeau, and McWilliams all claim a form of Christianity as the basis for their religious objection to the COVID-19 vaccination. [ECF No. 1-1 at ¶¶ 25-27; 45-47; and 54-57]. While the Christian faith varies widely from practitioner to practitioner, and between different sects of the faith, the common thread between the Plaintiffs' beliefs here is that, because the vaccines were tested on stem cells obtained from an abortion, it would be unconscionable for them to receive a COVID-19 vaccine. [ECF No. 1-1 at ¶ 76]. It appears that only Taylor has previously applied for a religious exemption to a vaccine in the past – she obtained a religious exemption to receiving the flu vaccine in 2020. [Id. at ¶ 21].

McGovern contends that she is a follower of the Congregation of Universal Wisdom, a faith that considers it sacrilege for followers to inject "unnatural substances" into their body. [Id. at ¶ 38]. This belief goes beyond COVID-19 vaccinations and includes all forms of medication that "defy natural law." See Congregation of Universal Wisdom, Tenets of Belief,

https://seekwisdom.life/beliefs/. There is no indication from the record that McGovern had previously applied for a vaccine exemption.

Lawrence claims that she is a practicing Wiccan. [ECF No. 1-1 at ¶ 63]. According to the complaint, Lawrence's faith demands that she seek guidance for spiritual decisions from prayer, and, in response to her prayers, she was "informed" that she should not receive a COVID-19 vaccination. [ECF No. 1-1 at ¶ 85-86].

After each of their terminations, Plaintiffs went to both the Equal Employment Opportunity Commission ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD"), where they obtained "Right to Sue" letters.[4] [ECF No. 1-1 at ¶ 10]. With these letters in hand, Plaintiffs filed suit against Milford Regional on November 23, 2022, in Worcester Superior Court. Taylor v. Milford Reg'l Med. Center, Inc., Dkt. No. 2285CV01339 (Worcester Super. Ct. 2023). On January 27, 2023, Defendant removed the case to this Court under federal question jurisdiction. [ECF No. 1].  Defendant subsequently filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) on October 24, 2023. [ECF No. 19].

II.   LEGAL STANDARD

"The standard of review of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)." Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007). "[U]nlike a Rule 12(b)(6) motion, [a Rule 12(c)] motion implicates the pleadings as a whole." Kimmel & Silverman, P.C. v. Porro, 969 F. Supp. 2d 46, 29 (D. Mass. 2013). During this review, "the court must view the facts contained in the pleadings in

---

[4] The "Right to Sue" letters themselves have not been submitted to the record. Since a motion for judgment on the pleadings is before this Court and all facts are drawn in the light most favorable to the nonmoving party, the Court assumes that the Plaintiffs complied with the time limitations provided by Title VII and c. 151b.

the light most favorable to the nonmovant and draw all reasonable inferences" in their favor. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008). Dismissal is only appropriate at this stage if the pleadings, viewed in the light most favorable to the non-moving party, fail to support a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In order for the complaint to survive, it must state a claim that "rais[es] a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In reviewing a 12(c) motion, the court must "separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Guadalupe-Báez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016) (citation omitted). When an affirmative defense is "definitively ascertainable from the complaint and other allowable sources" and the facts are "suffic[ient] to establish the affirmative defense with certitude," the Court can grant the Rule 12(c) motion on that defense. Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008). On a 12(c) motion, the Court may not "resolve contested facts," and "[o]nly if those properly considered facts 'conclusively establish the movant's point' is the motion for judgment on the pleadings granted." Children's Hosp. Corp. v. Cakir, 183 F. Supp. 3d 242, 244 (D. Mass. 2016) (quoting R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006)). "Where material facts are disputed, the Court must deny the motion." Id. at 245. Claims of employment discrimination under Massachusetts law are generally analyzed under the same

framework as under Federal law. See Wheatley v. Am. Tel. & Tel., 636 N.E. 2d 265, 268 (Mass. 1994) ("It is our practice to apply Federal case law construing the Federal anti-discrimination statutes in interpreting [c. 151b]"). Therefore, both the Title VII and c. 151b claims can be disposed of together. See, e.g., Robert v. Raytheon Tech. Corp., 2024 U.S. Dist. LEXIS 75469, at *9 (D. Mass. Apr. 25, 2024) (applying a single analysis for both plaintiff's Title VII and c. 151b claims).

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). Under the statute, religion "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j).

The First Circuit applies a "two-part framework in analyzing religious discrimination claims under Title VII." Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023). For a religious discrimination claim, a plaintiff must first make a prima facie case that a bona fide religious practice conflicts with an employment requirement and caused an adverse employment action. Id. (citation omitted). It is improper at this stage for the Court to inquire into the sincerity of religious beliefs, as that question implicates the credibility of the Plaintiffs and is highly fact-dependent. EEOC v. Union Independiente De La Authoridad De Acueductos Y Alcantarillados De P.R., 279 F.3d 49, 56 (1st Cir. 2002) ("Credibility issues such as the sincerity of an employee's religious belief are quintessential fact questions. As such, they ordinarily should be reserved 'for the factfinder at trial, not for the court [at the pleadings stage].'"). Despite that limitation, "[t]o qualify as a bona fide religious practice, a plaintiff must show 'both that the belief or practice is religious

and that it is sincerely held.'" <u>Antredu v. Mass. Dep't of Youth Servs.</u>, No. 22-12016-WGY, 2024 U.S. Dist. LEXIS 64535, at *10 (D. Mass. Apr. 9, 2024) (quoting <u>EEOC</u>, 279 F.3d at 56). If a plaintiff meets their burden, the burden then "shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." <u>Id.</u>

### III.    DISCUSSION

In Counts I and II, Plaintiffs claim violations of both Federal and Massachusetts laws that prohibit discrimination in employment on the basis of religion. Specifically, Plaintiffs argue that their termination for refusing to receive a COVID-19 vaccination constituted religious discrimination and that Milford Regional could have accommodated them by allowing them to wear masks, checking their temperature, monitoring their symptoms, and physically distancing themselves. [ECF No. 1-1 at ¶ 89]. In response, Milford Regional argues that these accommodations would place an undue hardship on them by "increasing the risk of spreading COVID-19; threatening the safety and health of patients, visitors, volunteers, and employees; and undermining the public's trust and confidence in the safety of Milford Regional." [ECF No. 20 at 2]. As the analysis of the Massachusetts state law claim follows the federal law, the Court will dispose of both claims at once.

### a.   Plaintiffs' Prima Facie Cases

To establish their prima facie case for religious discrimination in the workplace, Plaintiffs must show that a bona fide religious practice of theirs conflicted with an employment requirement, and it resulted in an adverse employment action. <u>Lowe</u>, 68 F.4th at 719. Though it is improper to inquire into the sincerity of the Plaintiffs' beliefs at this stage in litigation, <u>EEOC</u>, 279 F.3d at 56, the Court must still ensure that "the complaint alleges sufficient plausible facts from which it could

be reasonably inferred that being vaccinated against COVID-19 violates a tenant or principle of [the plaintiff's] religious belief." <u>Griffin v. Mass. Dep't of Revenue</u>, 2023 U.S. Dist. LEXIS 125845, at *12-13 (D. Mass. July 20, 2023); <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). This is to ensure that a litigant is not simply "mak[ing] [their] own standards on matters of conduct in which society as a whole has important interests." <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 216 (1972).

Turning to the case at hand, the Court first assumes that each Plaintiff's beliefs are sincerely held. Those beliefs, which Plaintiffs assert prohibited them from getting vaccinated against COVID-19, conflicted with Milford Regional's vaccination policy. As a result of this conflict, they faced the adverse employment action of termination. Thus, for purposes of this motion, Plaintiffs will have met their burden on establishing their prima facie case so long as each plaintiff has pled sufficient facts that the decision to not get vaccinated against COVID-19 was grounded in a core tenant of their religion- instead of merely being an idiosyncratic personal belief.

In support of their claim that receiving the COVID-19 vaccination is contrary to their Christian beliefs, Plaintiffs Taylor, Nadeau, and McWilliams quote scripture to generally criticizing the COVID-19 vaccination development process. This includes the belief that their God commanded people not to kill and that their God creates every human being in the womb. [<u>See</u> ECF No. 1-1 at ¶ 71]. These Plaintiffs assert that getting the COVID-19 vaccine would be akin to being an accomplice in the abortion process because the vaccines used fetal stem cells at various points in their development. [<u>See</u> <u>id.</u> at ¶¶ 72-76]. These facts are sufficient to establish their prima facie case because its allegations are concretely founded in their religion rather than their idiosyncratic personal beliefs.

McGovern pleads that the Congregation of Universal Wisdom is centered around a "Supreme Master," that commands followers not to allow others to dictate their health decisions and that it is "sacrilege to inject into the body medication that def[ies] natural law." [See ECF No. 1-1 at ¶¶ 82-84]. The COVID-19 vaccine is a medication developed by humans. To McGovern, this means that receiving the vaccine is sacrilege. As medication is sacrilege to the Congregation of Universal Wisdom and practitioners like McGovern, her refusal is indeed grounded in a core tenant of her belief.

Lawrence claims that receiving the COVID-19 vaccine violates her Wiccan faith because the core tenants are a belief that mother nature will provide people with what they need to survive. [ECF No. 1-1 at ¶ 64]. However, Lawrence fails to articulate how her Wiccan faith opposes vaccinations or the COVID-19 vaccination. The complaint's framing of how Lawrence decided that her Wiccan belief prohibited her from receiving a vaccine indicates that it was a personal decision rather than a tenet of the Wiccan faith. [ECF No. 1-1 at ¶ 86 ("After much prayer and reliance on her Wiccan rituals and practices, [Lawrence's] religious conscious was informed that she should not" get vaccinated.)]. While prayer is a common facet of many different religions, the complaint fails to explain the specific Wiccan rituals and practices that prohibit followers from receiving vaccines. Lawrence has failed to plead a "modicum of plausible facts sufficient to create an inference that the conflict arises from some specific tenet or principle" of her faith, and thus fails to establish her prima facie case. Griffin, 2023 U.S. Dist. LEXIS 125845 at 14 (dismissing a Covid vaccine religious discrimination claim where the plaintiff's only allegation was that she prayed to God and was "shown" that she should not receive the vaccine). Accordingly, the Court finds that Lawrence has failed to meet her burden to sustain her claims and Defendant's Motion for Judgment on the Pleadings is GRANTED as to all counts brought by Lawrence.

b.  Undue Hardship

Rather than challenge the Plaintiffs' prima facie cases, Defendant Milford Regional raises the affirmative defense of undue hardship in their motion for judgment on the pleadings. [ECF No. 20]. Plaintiffs claim that they could have been accommodated by, "wearing [] facemask[s], checking their temperature, monitoring for symptoms, and physically distancing from patients and employees." [ECF No. 1-1 at ¶ 89]. Milford Regional alleges that, as a matter of law, it would have been an undue hardship to accommodate Plaintiffs' vaccination exemption requests because doing so would "[i]ncrease[e] the risk of spreading COVID-19; threaten[] the safety and health of patients, visitors, volunteers, and employees; and undermin[e] the public's trust and confidence in the safety of Milford Regional, thereby dissuading patients from seeking needed medical care for fear of contracting COVID." [ECF No. 20 at 2]. Milford Regional also relies on the overall context of its business enterprise as a hospital to say that, as a matter of law, they are entitled to an undue hardship defense.

Courts have recognized that hospitals are uniquely positioned when balancing different responses to the outbreak of disease and should be afforded "substantial deference" when making determinations about appropriate measures to cope with a worldwide pandemic. See Adams v. Mass Gen. Brigham Inc., No. 21-11686-FDS, 2023 U.S. Dist. LEXIS 174606, at *2 (D. Mass. Sep. 28, 2023) ("As a major hospital and healthcare system, MGB is unquestionably entitled to rely on its own medical and scientific judgment in matters of patient health and safety, and to adopt strict infection-control policies to protect its patient and staff populations. And it has a strong interest in maintaining public confidence in the safety of its facilities."). That being said, no court in the First

Circuit, except for the District of Maine,[5] has yet to hold on a motion to dismiss[6] that granting exemptions to the COVID-19 vaccine would, as a matter of law, be an undue hardship for a hospital defendant.

The Supreme Court recently clarified that an employer faces an undue hardship when it can prove that accommodating a religious belief places a "substantial [burden] in the overall context of the employer's business." Groff v. DeJoy, 600 U.S. 447, 450 (2023). In evaluating whether an employer has established an undue hardship, courts consider the context of the particular employer's business, the nature of operations, direct economic costs, and indirect costs such as health or safety. Antredu, 2024 U.S. Dist. LEXIS 64535 at *13-14 (citing Together Emps. v. Mass General Brigham, Inc., 573 F.Supp.3d 412, 435 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022). Other relevant considerations in an undue hardship analysis include "[a]n employer's legitimate safety concerns" and "reputational effects" of granting an accommodation. Id. (citing Draper v. US Pipe & Foundry Co., 527 F.2d 515, 521 (6th Cir. 1975) and Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 136 (1st Cir. 2004)). "Although undue hardship is an affirmative defense, dismissal on a Rule 12 [(c)] motion is nonetheless appropriate if the facts establishing the

---

[5] Similar to the New York cases discussed *infra*, Maine state law requires employees of certain healthcare facilities be vaccinated against COVID-19. Lowe, 68 F.4th at 709; see 10-144-264 Me. Code R. § 2(A)(7); see also Me. Rev. Stat. Ann. tit. 22, § 802. A 2019 amendment removed religion and philosophical belief as reasons for which someone can be exempted from this requirement. Lowe, 68 F.4th at 710. In Lowe, the First Circuit held that, in Maine, defendant healthcare providers face an undue hardship if granting an exemption to the vaccine requirement would force them to violate state law. Id. at 722. Massachusetts has no similar law.

[6] This case is before the Court on a motion for judgment on the pleadings, however, the comparison to a motion to dismiss is appropriate because "[t]he standard of review of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)." Marrero-Gutierrez v. Molina, 491 F.3d at 5.

defense are clear on the face of the [] pleadings and there is no doubt that the plaintiffs' claims are barred." Lowe, 68 F.4th at 719 (cleaned up).

Milford Regional asks this Court to follow the lead of federal judges in New York and Washington and find that it faced an undue hardship as a matter of law. [ECF No. 20 at 1]. However, the cases Defendant cites are distinguishable from the case at hand. In the New York cases – Does 1-2 v. Hochul, Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C., and D'Cunha v. Northwell Health Sys's., – the accommodation requested would have required the defendant medical groups to break a New York State law requiring medical workers be vaccinated. 632 F. Supp. 3d 120, 145 (E.D.N.Y. 2022) ("[A] religious exemption from the vaccine requirement would impose an undue hardship on the Private Defendants because it would require them to violate state law"); 2023 U.S. Dist. LEXIS 84888, at *13 (S.D.N.Y May 15, 2023) ("Title VII cannot be used to require employers to break the law."); 2023 U.S. Dist. LEXIS 33343, at *7 (S.D.N.Y. Feb. 28, 2023) aff. D'Cunha v. Northwell Health Sys., No. 23-476-cv, 2023 U.S. App. LEXIS 30612 (2d Cir. Nov. 17, 2023) (dismissing a COVID-19 vaccine religious exemption claim because defendant would have faced the undue hardship of violating state law). Here, in Massachusetts, there is no similar law that Milford Regional would have violated by accommodating the Plaintiffs. Milford Regional also cited Beuca v. Wash. State Univ.; however, the law of that case is now outdated as it applied the "more than de minimis" standard of undue hardship that was overruled by the Supreme Court in Groff. See 600 U.S. 447; Beuca v. Wash. State. Univ., 2023 U.S. Dist. LEXIS 88221, at *6-7 (E.D. Wash. May 19, 2023).

In their opposition, Plaintiffs contend that Milford Regional cannot demonstrate that allowing religious exemptions to the vaccine requirement would be a blanket undue hardship because the hospital granted some exemptions based on medical reasons. [ECF No. 24 at 11]. The

Court notes Plaintiffs' argument but further factual development is required to establish that the positions in which the exempted employees worked posed the same burdens as Plaintiffs' positions on the operations of the hospital. See Antredu, 2024 U.S. Dist. LEXIS 64535, at *14 n.3 (D. Mass. 2024) ("It is possible, for instance, that those [exempted] employees had administrative positions that allowed for them to work from home, protecting their coworkers.").

Defendant has pled enough to establish a viable affirmative defense of undue hardship; however, it is premature  for the Court to dismiss this case based on the record before it regarding Milford Regional's defense. As Groff points out, Courts must "take[] into account all relevant factors at hand, including the particular accommodations at issue and their practical impact in light of the size and operating cost of an employer." Groff, 143 S. Ct. at 2295. Milford Regional has not conclusively established the nature of Plaintiffs' former jobs, merely relying on the complaint to conclude they were "face-to-face" jobs that worked with "its most frail and vulnerable patients." [ECF No. 20 at 10]. At the same time, Milford Regional acknowledges that McGovern and McWilliams allege that they were able to perform their jobs remotely, but states that those claims are conclusory and implausible. [Id.; see ECF No. 1-1 at ¶¶ 36, 59]. As such, the nature of Plaintiffs' positions and whether Plaintiffs might be able to work remotely is a contested fact that the Court may not resolve at this stage. See Children's Hosp. Corp., 183 F. Supp. 3d at 244. The nature of Plaintiffs' positions is important to evaluate whether the particular accommodations they sought would have been reasonable or practical for Milford Regional. Further, Milford Regional has not put forth information about the hospital's size, operating costs, or potential reputational harms that would flow from these plaintiffs refusing to receive the COVID-19 vaccination. This is not to say that Milford Regional did not face a burden, but that the record at this early stage of

litigation does not clearly establish that the proposed accommodations requested by the Plaintiffs placed an undue hardship on the hospital.

As stated above, Plaintiffs, with the exception of Ms. Lawrence, have met their burden on establishing their prima facie case. While a Court may grant a Rule 12(c) motion on the basis of an affirmative defense such as undue hardship, the facts must be "suffic[ient] to establish the affirmative defense with *certitude*," to warrant dismissal. Gray v. Evercore Restructuring L.L.C., 544 F.3d at 324 (emphasis added). Milford Regional's affirmative defense is "clear on the face of the [] pleadings," but the Court does not find that Defendant has established that "there is no doubt that the plaintiffs' claims are barred" such that dismissal is warranted. See Lowe, 68 F. 4th at 719 (1st Cir. 2023). Given the factual disputes at play, Milford Regional is not entitled to judgment on the pleadings. See, e.g., Children's Hosp. Corp., 183 F. Supp. 3d at 248 (D. Mass. 2016); Elsevier Ltd. v. Chitika, Inc., 826 F. Supp. 2d 398, 403 (D. Mass. 2011) (denying motion for judgment on the pleadings even though the moving party "[might have] eventually [been] entitled to judgment" because factual questions remained unresolved).

IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is GRANTED IN PART as to claims brought by Plaintiff Lawrence in Counts I and II. As to the rest of the Plaintiffs' claims, Defendant's motion is DENIED.

SO ORDERED.

Dated: May 10, 2024

                                   /s/ Margaret R. Guzman
                                  Margaret R. Guzman
                                  United States District Judge